Joseph STOLMAYER, et al., Plaintiffs

v.

John B. MCCARTHY, Defendant.

Case No. 5:15–cv–02409

United States District Court,
N.D. Ohio, Eastern Division.

Signed March 21, 2016

Elizabeth L. Sokol, Birmingham, MI, for Plaintiff.

Jeffrey P. Jarosch, Rebecca L. Thomas, Office of the Attorney General—Health & Human Services, Columbus, OH, for Defendant.

## OPINION AND ORDER

Dan Aaron Polster, United States District Judge

Plaintiffs Joseph and Wilma Stolmayer filed this lawsuit under 42 U.S.C. § 1983 challenging Defendant Director of the Ohio Department of Medicaid John B. McCarthy's decision imposing an improper transfer penalty and granting Ms. Stolmayer less than full Medicaid coverage. Before the Court is a motion to dismiss filed by Defendant. (Doc. # : 5). Plaintiffs have filed a response (Doc. # : 7), and Defendant has replied. (Doc. # : 8). For the reasons stated below, Defendant's motion is granted.

## I.

Since August 2014, Plaintiff Ms. Stolmayer has resided in a nursing care facility. (Doc. # : 1, ¶¶ 3, 6). In December 2014, Ms. Stolmayer applied for Medicaid benefits with the Stark County Department of Jobs and Family Services ("Stark County Agency"). (Doc. # : 1, ¶ 7; Doc. # : 1–1, p. 2). Her application was denied because she had assets above the threshold amount for eligibility. (Doc. # : 1, ¶ 7). After those resources were spent down, Ms. Stolmayer was deemed eligible for Medicaid, but with restricted coverage, effective March 1, 2015. (Doc. # : 1, ¶ 7). The period of restricted coverage was to last through January 2018 with a partial restricted month in February 2018. (Doc. # : 1, ¶ 7; Doc. # : 1–1, pp. 2–3). Because Ms. Stolmayer's coverage is restricted for this time period, she and her husband, Plaintiff Mr. Stolmayer, must cover the cost of nursing home care themselves. (Doc. # : 1, ¶ 15). Plaintiffs allege that because they owe the nursing care facility approximately $46,000, Ms. Stolmayer is facing eviction. (Doc. # : 1, ¶ 16).

Coverage was deemed restricted because the Stark County Agency determined that there was an "improper trans-fer" of the couple's resources after Ms. Stolmayer was admitted to the nursing home but before her Medicaid eligibility had been determined. (Doc. # : 1, ¶ 1A). As Plaintiffs indicate, Mr. Stolmayer used the couple's shared resources to purchase four annuities worth $344,743, payable only to him. (Doc. # : 1, ¶ 8).

Under the relevant Medicaid law, Ms. Stolmayer is considered an "institutionalized spouse." (Doc. # : 1, ¶ 1A). Mr. Stolmayer, who remains at home and in the community, is considered the "community spouse." (Doc. # : 1, ¶ 1A). A community spouse may keep a limited amount of the couple's resources. This is known as the Community Spouse Resource Allowance ("CSRA"). Ohio Admin. Code. 5160:1–3–07(G). The CSRA is not considered in determining an institutionalized spouses' Medicaid eligibility. However, resources that exceed the CSRA are considered available to the institutionalized spouse for eligibility purposes. Ohio Admin. Code. 5160:1–3–07(G). The Stark County Agency determined that the annuities were purchased with funds in addition to the CSRA. (Doc. # : 1–1, p. 2). As a result, those funds were counted when the Agency made Ms. Stolmayer's restricted eligibility determination. (Doc. # : 1–1, p. 2).

After the initial determination of restricted eligibility, Ms. Stolmayer requested an administrative hearing and an administrative appeal with the Ohio Department of Job and Family Services Bureau of Hearings ("Ohio Agency"). (Doc. # : 1–1; Doc. # : 1–2). During those proceedings, Ms. Stolmayer argued that the Stark County Agency erred when it determined that the purchase of annuities amounted to an "improper transfer." (Doc. # : 1–1, p. 2; Doc. # : 1–2, p. 2). Ms. Stolmayer cited a Sixth Circuit case, *Hughes v. McCarthy*, 734 F.3d 473 (6th

Cir.2013), for the proposition that community spouse's purchase of an actuarially sound annuity for his sole benefit does not warrant a transfer penalty for the institutionalized spouse, if that annuity complies with the requirements of the Medicaid Act. The Ohio Agency rejected the argument that it was bound by a decision of the Sixth Circuit, observing that while state courts are bound by the decisions of the United States Supreme Court, it remains undecided whether a state court is bound by the decisions of lower federal courts. *See* Doc. # : 1–2, p. 4 (citing *State of Ohio v. Burnett,* 93 Ohio St.3d 419, 755 N.E.2d 857 (2001)). As there was no Supreme Court decision on point, the Ohio Agency followed Ohio law and concluded that the purchase of annuities with resources in excess of the CSRA is considered a "improper transfer." (Doc. # : 1–2, pp. 2–3). On August 10, 2015, the Ohio Agency affirmed the decision of the Stark County Agency. (Doc. # : 1–2, p. 4).

It is undisputed that, although she had the option to appeal the final administrative decision to common pleas court, Ms. Stolmayer did not appeal.

On November 24, 2015, Plaintiffs filed their complaint in the instant case pursuant to 42 U.S.C. § 1983, alleging that the Medicaid Act grants Plaintiffs the right to purchase annuities for the sole benefit of a community spouse. (Doc. # : 1). Plaintiffs assert two counts: (1) that their rights were violated under the Federal Medicaid Act; and (2) that the state's interpretation of the Ohio administrative code is invalidated by the Supremacy Clause of the U.S. Constitution. Both assertions are founded on *Hughes v. McCarthy,* 734 F.3d 473 (6th Cir.2013), which, Plaintiffs argue, stands for the proposition that assets transferred to a Medicaid claimant's spouse for the sole benefit of

the spouse may not be considered an improper transfer. (Doc. # : 1, ¶ 26).

Defendant argues that the complaint should be dismissed on several grounds: (1) that the doctrine of res judicata bars Plaintiffs' claims, since they were previously litigated in administrative proceedings; (2) that the Eleventh Amendment of the United States Constitution bars Plaintiffs' claims; (3) that Plaintiffs have no standing to bring their claims; (4) that Plaintiffs fail to state a claim because the relevant federal Medicaid laws do not satisfy the clear-notice rule; and (5) that dismissal is appropriate pursuant to the *Burford* abstention doctrine. (Doc. # : 5).

## II.

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Shoup v. Doyle,* 974 F.Supp.2d 1058, 1071 (S.D.Ohio 2013) (citing *Handy–Clay v. City of Memphis, Tenn.,* 695 F.3d 531, 538 (6th Cir.2012). A court need not, however, credit bald assertions, legal conclusions, or unwarranted inferences. *Kavanagh v. Zwilling,* 578 Fed.Appx. 24 (2d Cir. Sep. 17, 2014) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Id.* at 555, 127 S.Ct. 1955. Although Rule 12(b)(6) does not impose a probability requirement at the pleading stage, a plaintiff must present enough

facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quotation marks omitted). Simply reciting the elements of a cause of action does not suffice. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

### III.

As noted above, Defendant argues that this matter should be dismissed for several reasons, but the Court need only address one of those reasons to resolve this case. For the reasons described below, Defendant's argument that res judicata bars the plaintiffs' claims is well-taken.

The purpose of res judicata "is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981). This Court gives " 'the same preclusive effect, under the doctrines of res judicata and collateral estoppel, to state court judgments that those judgments would receive in courts of the rendering state'." *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 Fed.Appx. 994, 998 (6th Cir.2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999)). This Court looks "to the state's law to assess the preclusive effect it would attach to that judgment." *Id.* In Ohio, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (Ohio 1995). A judgment may

be valid for the sake of res judicata even if the judgment was incorrect. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

"Under Ohio law, the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.' " *Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist.*, 422 Fed.Appx. 497, 500 (6th Cir.2011) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 862 N.E.2d 803 (2007)). In this case, although Defendant does not say it explicitly, it is evident that claim preclusion is the asserted basis for dismissal.

In Ohio, claim preclusion has four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action. *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir.1997) (citations omitted). Each element will be addressed in turn.

*Final Decision on the Merits*

In the present case, the final decision of the State Agency is a valid final decision on the merits. While Plaintiffs contend that, as a rule, a prior administrative decision has no preclusive effect,[1] the Ohio Supreme Court says otherwise: "[r]es judicata, whether claim preclusion or

---

1. In support of their argument that an administrative decision has no preclusive effect, Plaintiffs cite *Rodefer v. McCarthy*, 36 N.E.3d 221, 229 (Ohio Ct.App.2015). *Rodefer* is inapposite, as the language upon which Plaintiffs rely relates to a different issue altogether (exhaustion of administrative remedies) not the question of whether an unappealed administrative decision has preclusive effect.

issue preclusion, applies to administrative proceedings that are 'of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding.'" *Grava,* 73 Ohio St.3d at 381, 653 N.E.2d 226 (quoting *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals,* 31 Ohio St.3d 260, 510 N.E.2d 373 (1987)).

It is undisputed that the proceedings before the State Agency were of a judicial nature, and, upon review of the State Agency's written decision, it is evident that Ms. Stolmayer had ample opportunity to litigate the precise issue raised here. In administrative proceedings, which included a hearing, Ms. Stolmayer argued, just as she does now, that the holding of *Hughes v. McCarthy, supra,* should control the outcome of the case. (*See* Doc. 1–1, pp. 2–3; Doc. # : 1–2, pp. 2–4). The State Agency considered this argument and rejected it, on the ground that state courts are not bound by the decisions of lower federal courts. Ms. Stolmayer could have, but did not, appeal this decision to the court of common pleas. As such, she is bound by that decision. *See Carroll v. City of Cleveland,* 522 Fed. Appx. 299, 303 (6th Cir.2013) ("Claim preclusion 'is ... applicable to actions which have been reviewed before and administrative body, in which there has been no appeal made.' ").

*Same Parties or Their Privies*

Here, the parties are either the same as, or they are in privity with, the parties in administrative proceedings. Ms. Stolmayer, a plaintiff here, was a named party in the prior action, and there is no dispute that her husband, Mr. Stolmayer, while not a named party in administrative proceedings, is in privity with his wife, and that his interests were adequately represented in the prior case. *See Sanders Confectionery Prods., Inc. v. Heller,* 973 F.2d 474, 481 (6th Cir.1992) (In the context of claim preclusion, "privity ... means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented.").

Further, while Defendant John B. McCarthy was not a named party in administrative proceedings, principles of claim preclusion "do not always require one to have been a party to a judgment in order to be bound by it." *Richards v. Jefferson Cnty.,* 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996). This court recognizes that "[i]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir.2003). In the present case, Defendant McCarthy, who is sued in his official capacity, stands in the shoes of, and is in privity with, the State of Ohio.

*Claim already Litigated / Same Transaction or Occurrence*

In administrative proceedings, Plaintiffs generally argued that Mr. Stolmayer's purchase of annuities should not have been deemed an improper transfer under the Medicaid laws. Here, although Plaintiffs' claims are brought as causes of action under 42 U.S.C. § 1983, their claims, which arise from the same set of facts, are substantially the same as the claims raised in administrative proceedings. "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap." *United States v. Tohono O'odham Nation,* 563 U.S. 307, 131 S.Ct. 1723, 1730, 179 L.Ed.2d 723 (2011). There is no question, in this instance, that the factual allegations raised here overlap precisely with the facts of the prior case. Nor is there a dispute that Plaintiffs' claims in this case arise from the same transaction or occurrence that formed the basis of the previous case.

In sum, the Court concludes that the final, unappealed administrative decision of the Ohio Agency presents a bar to the instant action.

### IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted.

**IT IS SO ORDERED.**